IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| PAMELA HILL, ADAM HILL, and DYLAN HILL, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 2:13-cv-02677-JTF-tmp |
| ) | |
| OLD NAVY, LLC and FOX TELEVISION STATIONS, INC. d/b/a WHBQ-TV FOX CHANNEL 13 MEMPHIS, ) | |
| ) | |
| Defendants. ) | |

**ORDER GRANTING DEFENDANT WHBQ-TV FOX TELEVISION STATION, INC.'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendant Fox Television Station, Inc.'s ("Fox" or "WHBQ") Motion for Summary Judgment as to all of Plaintiffs' claims against it, filed on October 31, 2013. (DE #14). Plaintiffs filed a Response in Opposition to Defendant WHBQ's Motion for Summary Judgment on December 17, 2013. (DE #21). With leave from the Court, Defendant WHBQ filed a Reply to Plaintiffs' Response in Opposition to its Motion for Summary Judgment on January 17, 2014. (DE #26).[1] For the reasons set out below, the Court finds that Defendant WHBQ's Motion for Summary Judgment should be GRANTED.

## I. FINDINGS OF FACT

The parties do not dispute the material facts of this case. On February 9, 2013, Plaintiffs Pamela and Dylan Hill, went to an Old Navy store in Memphis, Tennessee, to buy some clothes. Mrs. Hill paid for the clothes with a personal check. She received a receipt for the transactions

---

[1] Plaintiffs filed a Sur-Reply without obtaining leave from the Court. (DE #29). Defendant WHBQ moved to file a Response to Plaintiff's Sur-Reply or, alternatively, to strike the Sur-Reply. (DE #33). Defendant attached its proposed Response to the Motion. (DE #33-1). Plaintiffs filed

and she and her son, Dylan left the store. (DE #1-2). Two days later, on Monday, February 11, Fawna Lovelace of Olive Branch, Mississippi noticed a charge from Old Navy dated February 9 in her back account. Ms. Lovelace notified the Olive Branch Police Department. Olive Branch police presumably contacted the Memphis Police Department ("MPD"), because the MPD investigated the matter. After their brief investigation, the MPD issued a press release to local news outlets. (DE #21). The press release, dated February 13, 2013, states:

> On Monday, February 11, 2013, officers responded to a Forgery call at 8085 Giacosa Place, Old Navy. The complainant advised that someone had created and forged a check using her information. This forged check was used to pay for merchandise at the Old Navy store.
>
> The responsible male and female were caught on video surveillance cameras. Still shot photos and video of the suspects are available.
>
> Anyone with information on the identities and the whereabouts of these suspects is asked to call Crime Stoppers at 528-CASH or the Economic Crimes Bureau at 636-3350.

(DE #14-4). The email containing this press release reportedly contained photos of Plaintiffs Pamela and Dylan Hill at the Old Navy store. However, the email and photos have not been provided to the Court. (DE #14-3). Based on this press release, WHBQ ran a segment about the incident on February 14, 2013.[2] The reporter made the following statement:

> Two thieves are caught on camera forging a check to steal some clothes. Alright this is video of the duo at Old Navy on Giacosa Place. Investigators say they created and forged a check under another woman's identity. Then they used the check to pay for the merchandise from the store. Now if you recognize either person call Crimestoppers. Police want your help. The number is 528-CASH.

Images of the Plaintiffs were shown on the screen while the reporter spoke (DE #14-2).

---

their Response in Opposition to this Motion. (DE #34). The Court exercises its discretion in considering these filings, as they contain the same arguments and assertions as the above mentioned docket entries.
[2] Defendant WHBQ has filed a DVD containing this news story, which the Court has viewed.

When Mrs. Hill arrived at work on the day the news report was broadcast, many of her coworkers asked her about what they had seen on the news. Mrs. Hill then found the story on the internet, which caused her to become distraught. Suspecting that her identity may have been stolen, Mrs. Hill left work and went to her bank to inquire about any suspicious activity. The bank determined that nothing appeared to be abnormal. Mrs. Hill then realized that the account number on the Old Navy receipt was different than her bank account number by one digit. Mrs. Hill spoke with the police, who told her to go into the MPD Economic Crimes Unit, which she did the next day, February 15, 2013. When Mrs. Hill arrived at the Memphis Police Headquarters, she explained what happened to the detective, who contacted Old Navy. Old Navy claimed their system was error proof, but the detective closed the file on Mrs. Hill and allowed her to leave. (DE #1-2).

During the day, the report was broadcast and in the days following, Mrs. Hill received many inquiries about the situation. This, in addition to the fact that a large number of people saw the news story about Mrs. Hill and her son Dylan, has allegedly caused her significant emotional distress. Plaintiffs claim that WHBQ never ran a retraction of the story, even though other news stations ran retractions. (DE #1-2). No evidence has been presented to the Court regarding other new stations' reporting of the incident or any retractions these stations may have made.

As a result of the above events, Mrs. Hill, her son Dylan, and her husband Adam filed suit against Old Navy, LLC ("Old Navy") and WHBQ in the Circuit Court of Tennessee for the Thirtieth Judicial District at Memphis on August 9, 2013. They pled counts of negligence, defamation and libel, false light invasion of privacy, intentional infliction of emotional distress, negligent infliction of emotional distress, and loss of consortium (on the part of Adam Hill). (DE #1-2). Defendant Old Navy removed the case to the United States District Court for the Western

District of Tennessee on August 30, 2013. (DE #1). Both Defendants filed Answers to the Complaint on October 7, 2013. (DE #12 and DE#13). Defendant WHBQ has filed a Motion for Summary Judgment as to all claims against it, which it bases on the Tennessee fair report privilege. (DE #14).

## II. JURISDICTION

The Plaintiffs in this action are residents of the state of Tennessee. Defendant Old Navy is a corporation incorporated under the laws of Delaware and has its principle place of business in San Francisco, California. Defendant Fox Television Stations, Inc. is also incorporated under Delaware law, and its principal place of business is in New York, New York. According to the Notice of Removal (DE #1), jurisdiction of this case is predicated on diversity of citizenship jurisdiction pursuant to 28 U.S.C. §1332.

A federal court has original jurisdiction over diversity cases where the matter in controversy exceeds $75,000.00. The Plaintiffs are seeking $500,000.00 in total damages from Defendants Old Navy and Fox/WHBQ, therefore meeting the requisite amount in controversy. Accordingly, the requirements of diversity jurisdiction under 28 U.S.C. §1332(a)(1) have been satisfied.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides the standard for deciding summary judgment motions premised on state law claims that are heard in federal court based on diversity jurisdiction. *Biegas v. Quickways Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009); *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 165 (6th Cir. 1993), *abrogated on other grounds by Hertz Corp. v. Friend*, 559 U.S. 70, 130 S.Ct. 1195, 175 L.Ed.2d 1009 (2010). Summary judgment is granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant has the burden of showing that the non-movant cannot present evidence that creates a genuine issue of material fact. *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 485 (6th Cir. 2008). The non-movant must demonstrate that there is "significant probative evidence" to support their claims, not just a mere doubt about the material facts involved. *Moore v. Philip Morris Cos.*, 8 F.3d 335, 340 (6th Cir. 1993). A "mere existence of a scintilla of evidence" supporting the non-movant's stance is not enough; the evidence must be sufficient for a jury to be able to find in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). All evidence, facts, and reasonable inferences should be viewed in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court, however, cannot weigh the evidence presented or determine its credibility. *Anderson*, 477 U.S. at 255.

## IV. <u>ANALYSIS</u>

Because this is a diversity case, the Court will apply the substantive law of the forum state, Tennessee. *Vencor, Inc. v. Standard Life & Accident Ins. Co.*, 317 F.3d 629, 634 (6th Cir. 2003) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, __ L.Ed.__ (1938)). Defendant WHBQ has invoked the Tennessee fair report privilege, a well-established Tennessee common law doctrine that, if applicable, would bar all claims against it. (DE #14). The fair report privilege protects media entities that report on official actions and proceedings. *Milligan v. U.S.*, 670 F.3d 686, 696 (6th Cir. 2012) (quoting *Lewis v. NewsChannel 5 Network, L.P.*, 238 S.W.3d 270, 285 (Tenn. Ct. App. 2007)). Police communications have been included in the official actions/proceedings covered by the fair report privilege. *See Milligan*, 670 F.3d at 697;

*see also Archibald v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 3:11–0728, 2012 WL 3000137 at *4 (M.D. Tenn. July 23, 2012).

The fair report privilege is not absolute, however; the report of the official action must be "a fair and accurate summation of the proceeding" and "display balance and neutrality." *Lewis*, 238 S.W.3d at 284 (quoting *Smith v. Reed*, 944 S.W.2d 623, 625 (Tenn. Ct. App. 1996)). Small discrepancies between the contents of the official action and the news report do not make a report unfair or inaccurate, so long as the statements in the news report are not false in relation to the contents of the official action. *Milligan*, 670 F.3d at 697 (quoting *Lewis*, 238 S.W.3d at 284). The report need only convey "a correct and just impression of what took place" to be considered fair and accurate for these purposes. *Id.*

If the Court determines that a news report is of an official action that falls under the fair report privilege and that the report is a fair and accurate impression of the communication or event, it does not matter that the report may contain material that is detrimental to the subject of the report. *Stem v. Gannett Satellite Info. Network, Inc.*, 866 F. Supp. 355 (W.D. Tenn. 1994) (quoting *American Publishing Co. v. Gamble*, 115 Tenn. 663, 678 (1905)). However, a plaintiff may defeat the privilege by proving by clear and convincing evidence that the defendant acted with actual malice. *Lewis*, 238 S.W.2d at 283. A report is given with actual malice when the reporter knows it is false or recklessly disregards whether the contents of the report are truthful or not. *Milligan*, 670 F.3d at 698 (quoting *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279–280 (1964)). A reporter recklessly disregards the truth if they have serious doubts as to the truth of the official action or communication. *Id.* (quoting *Compuware Corp. v. Moody's Investors Servs., Inc.*, 499 F.3d 520, 526 (6th Cir. 2007)). If there are no serious doubts about the truthfulness of the official communication, there is no duty to investigate its contents, even if it

would be prudent to do so. *Id.* (quoting *Harte-Hanks Comm., Inc. v. Connaughton*, 491 U.S. 657, 688, 109 S.Ct. 2678, 105 L.Ed.2d 562 (1989)).

Neither party disputes that the MPD press release on which WHBQ's report was based is an official action/communication that falls under the fair report privilege. The parties do, however, dispute whether the report was a fair and accurate summation of the MPD press release sent to various new entities. Plaintiffs cite Oklahoma law to persuade the Court that the issue of fairness and accuracy is a question of fact for a jury to decide. (DE #21). The Court rejects this argument, as Tennessee law clearly regards the application of the fair report privilege as a "question of law to be determined by the Court." *Smith*, 944 S.W.2d at 624. The Court must, therefore, compare the MPD press release to WHBQ's report in order to determine whether the report was a fair and accurate summary of the press release.

Plaintiffs' contention that the WHBQ news broadcast was not fair and accurate rests on the use of two words: "thieves" and "steal." Plaintiffs claim that these words carry the connotation of a conclusion of guilt and that they unnecessarily sensationalize the contents of the MPD press release. Plaintiffs argue that a fair and accurate report would have referred to Plaintiffs Pamela and Dylan Hill as suspects so that viewers would realize that they had not yet been found guilty of forgery and theft.[3] (DE #21). Defendant WHBQ counters that their report summarized the "gist" of the press release and that "thieves" and "steal" are not inaccurate because forgery is classified as a form of theft. Defendant also asserts that these words do not denote ultimate guilt since it is clear that the subjects of the press release had not yet been arrested. Defendant reasons that the public would realize that suspects who had not yet been apprehended would not have been convicted at that point. In addition, Defendant points to its

---

[3] Plaintiff filed an affidavit of a television and radio broadcaster, which asserts that news stations do not typically make such changes in terminology and that the terms used here are not fair and accurate. The Court does not consider this affidavit because whether such changes are

use of the MPD Crimestoppers phone number and the appeal that the police needed the public's help, which indicates to viewers that the report was based on communication from the police. (DE #14).

The Court finds that WHBQ's report of the incident at Old Navy is a fair and accurate summary of the police press release upon which it was based. While the Court acknowledges that the use of the words "thieves" and "steal" instead of "suspects" may cause the public to view Pamela and Dylan Hill in a more negative light, this does not skew the contents of the MPD press release. The press release indicates that "the responsible male and female were caught on video surveillance cameras" illegally obtaining merchandise by forging a check. The WHBQ reporter, during the one and only news segment, indicates that "two thieves are caught on camera forging a check to steal some clothes." In the state of Tennessee, individuals who forge checks are prosecuted for theft of property. Thus, the news report is not an inaccurate description based on the MPD press release's characterizations. In addition, the use of these two words alone does not overly sensationalize the news report or cause it to be misleading. The report as a whole is a straightforward restatement of the press release. Therefore, since the report is a fair and accurate summary of an official communication, the Court finds that the Tennessee fair report privilege applies to WHBQ's report. Plaintiffs must thus prove by clear and convincing evidence that Defendant WHBQ acted with actual malice in order to defeat the privilege.

Plaintiffs indicate they need more time to conduct discovery in order to uncover evidence that may aid in proving the presence of actual malice. Fed. R. Civ. P. 56 (d). (DE #21). The Court does not agree and the request is denied. The Court notes that the Motion for Summary Judgment was filed approximately three weeks after entry of the scheduling order. Normally,

---

common or not is irrelevant to the question of fairness and accuracy, and the affiant's declaration that the report is not fair and accurate is merely a bare assertion with no supporting evidence.

8

when a party has had little or no opportunity for discovery, a grant of summary judgment would amount to an abuse of discretion.  However, a Rule 56 (d) request may be denied where the supporting declaration is vague or conclusory or where additional discovery could not make a factual or legal difference in the outcome.  *CenTra, Inc. v. Estrin,* 538 F.3d 402, 420 (6th Cir. 2008).  Such is the case here.

The MPD sent out its press release on February 13, 2013.  The news report at issue was broadcast on February 14, 2013.  Plaintiff Pamela Hill met with the police department in an effort to clear up the matter on February 15, 2013.  It would have been impossible for Defendant WHBQ to determine that a mistake had been made and that the individuals mentioned in the MPD press release and shown in the surveillance video did not actually commit a crime.  Neither WHBQ nor the MPD knew the individuals' actual identities, and Mrs. Hill had not yet come forward to resolve the matter.  In addition, nothing in the report would suggest that it was false.  WHBQ had no reason to question the press release's accuracy, especially since the purpose of such press releases is to aid police in the apprehension of individuals suspected of committing crimes.   *Milligan*, 670 F.3d at 698.  Thus, Plaintiffs cannot prove that Defendant WHBQ acted with actual malice when reporting the contents of the MPD press release*. Id.*  The Plaintiffs have therefore not overcome the fair report privilege.

## **CONCLUSION**

For the reasons stated above, the Court finds that Defendant WHBQ's news report about the incident is a fair and accurate summary and account of the contents of the Memphis Police Department press release upon which it was based.  As such, the Tennessee fair report privilege applies.  Plaintiffs have not met their burden of proving by clear and convincing evidence that Defendant WHBQ acted with actual malice in reporting the incident at Old Navy and thus cannot

9

defeat the privilege.  Therefore, the Court GRANTS Defendant WHBQ's Motion for Summary Judgment, DE #14, as to all claims against it.  All claims against Defendant WHBQ are dismissed.

**IT IS SO ORDERED** this the 20th day of May, 2014.

<u>*s/John T. Fowlkes, Jr.*</u>
JOHN T. FOWLKES, JR.
UNITED STATES DISTRICT JUDGE
